# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3479

_____

United States of America

*Plaintiff - Appellee*

v.

Richard C. Mathews

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 11, 2014
Filed: August 1, 2014

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Richard C. Mathews of five counts of subscribing to false tax returns, in violation of 26 U.S.C. § 7206(1), and one count of endeavoring to obstruct the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).

The district court[1] sentenced him to 27 months' imprisonment and ordered him to pay restitution of $56,904.29. He appeals, attacking the sufficiency of the evidence. With jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

For the past 20 years, Mathews operated several internet-based, multi-level marketing businesses. In 1999, his 1997 tax return was audited by the Internal Revenue Service (IRS), but no changes were made to his return. During the audit, Mathews questioned whether the government had a constitutional right to enforce the internal revenue laws.

The IRS again audited Mathews in 2007, reviewing his 2005 tax return. The IRS discovered what appeared to be unreported income related to a PayPal account and noted that one of Mathews's businesses did not appear on his tax return. Upon further review of Mathews's online accounts, the IRS learned that he had a second bank account, despite Mathews initially disclosing only a personal checking account. In subsequent interviews, Mathews repeatedly changed his story about his business operations, changing key details about his role and the flow of funds. He insisted one of his businesses was actually the beneficiary of a trust in Belize.

Mathews's case was referred to the IRS's criminal division. In July 2009, special agents executed a search warrant at his home. During the search, Mathews told the agents that he had $20 in his pocket but no other cash in his house. The agents subsequently found $3,000 in one fire safe and $10,000 in another. Mathews claimed to have forgotten about the $3,000; he initially denied ownership and knowledge of the $10,000, but later admitted the money was his.

---

[1] The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

-2-

The IRS obtained Mathews's bank records, which showed gross receipts of $67,359.67, $39,179.32, $57,036.27, $27,359.46, and $54,365.70, respectively, for the years 2004–2008. Mathews's tax returns showed gross receipts of $3,560, $3,318, $0, $5,323, and $10,000, respectively, for the same years. Mathews claimed the gross receipts were not income to him, but were paid out to members of one of his businesses. However, Mathews was unable to identify any payments to members from his accounts in those years.

## II. Discussion

Mathews challenges the sufficiency of the evidence supporting his convictions. This court reviews "'the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" United States v. Morris, 723 F.3d 934, 938 (8th Cir. 2013) (quoting United States v. Yarrington, 634 F.3d 440, 449 (8th Cir. 2011)). "We will affirm the verdict 'if any rational jury could have found the defendant guilty beyond a reasonable doubt.'" Id. (quoting United States v. Ojeda-Estrada, 577 F.3d 871, 874 (8th Cir. 2009)). "'Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict.'" Id. (quoting United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001)).

### A. Subscribing to False Tax Returns

Mathews was convicted of violating 26 U.S.C. § 7206(1), which prohibits "[w]illfully mak[ing] and subscrib[ing] any return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." Filing false tax returns is a specific intent crime requiring a showing of willfulness, which "simply means a voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991) (quotation omitted). Mathews acknowledges

signing and filing tax returns under penalty of perjury, but he denies that he did so "willfully." He maintains that there is no proof as to his mental state.

Intent may be inferred from conduct, and "'[w]illfulness in a criminal tax case may be established by a consistent pattern of not reporting income'" or inconsistently reporting income. Morris, 723 F.3d at 940 (quoting United States v. Schaefer, 4 F.3d 679, 681 (8th Cir. 1993)). Additionally, "whether an act was committed willfully may be inferred from the facts of the case." Schaefer, 4 F.3d at 681. The government presented evidence of a "consistent pattern" of under-reporting income. From 2004 to 2008, Mathews's reported gross receipts were a small fraction of the receipts deposited into his bank account. Moreover, Mathews's willfulness is established by his repeated efforts to conceal information about his business operations and checking accounts. See United States v. Bliss, 735 F.2d 294, 301 (8th Cir. 1984) (defendant's "willfulness was established by rather strong evidence showing his efforts to conceal the true nature of the . . . transactions").

Mathews argues that the 1999 audit gave him a "good faith belief" that he was properly preparing his tax returns. At trial, he testified that he had not changed the way he reported income. However, the jury was free to disregard Mathews's statements as not credible. Morris, 723 F.3d at 939 (the determination of intent "often depends on the credibility of witnesses" and is "within the province of the factfinder" (quotation omitted)). Particularly in light of Mathews's evasiveness when questioned by the IRS, a rational jury could have discredited his alleged "good faith belief."

Lastly, Mathews maintains that the government presented "only one-half of the equation" when it introduced evidence of gross receipts but "made no effort to account for expenses and deductions." To the contrary, trial testimony showed that expenses were "minimal" and that "most of the money that went into [Mathews's] account was profit." Trial testimony also showed that Mathews treated the deposits

into his accounts as personal income, using the receipts to obtain credit and pay personal expenses.

Moreover, evidence of Mathews's expenses and deductions was not necessary for conviction. Trial evidence shows Mathews under-reported gross receipts on Schedule C, making his tax return not "true and correct as to every material matter." 26 U.S.C. § 7206(1). A rational jury could convict Mathews of subscribing to a false return even if he also under-reported his expenses and deductions.

## B. Endeavoring to Obstruct Internal Revenue Laws

Mathews also challenges the sufficiency of the evidence supporting his conviction for endeavoring to obstruct the internal revenue laws. He was convicted under 26 U.S.C. § 7212, which provides:

> Whoever corruptly . . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both . . . .

This court has defined "corruptly" to mean "'an effort to secure an unlawful advantage or benefit, and, in particular, to secure a financial gain.'" United States v. Dykstra, 991 F.2d 450, 453 (8th Cir. 1993) (quoting United States v. Yagow, 953 F.2d 423, 427 (8th Cir. 1992)).

Mathews repeatedly lied to IRS agents during the audit. He failed to disclose one of his bank accounts and denied receiving compensation from one of his businesses. During the search of his home, he lied about the presence of $13,000 in cash. He was misleading and evasive about his business operations, continually

changing key details about his role and the flow of funds. He claimed money from one of his businesses was actually income from a trust in Belize. A rational jury could find that Mathews's actions were an attempt to obstruct or impede the IRS's administration of the tax code so that he could secure a financial gain.

## III. Conclusion

For these reasons, the judgment of the district court is affirmed.

_____